No. 22-1139

IN THE UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

AMANDA CARSON, f/k/a Amanda Leche,

*Plaintiff - Appellant,*

v.

EMERGENCY MD, LLC; DAVID BRANCATI; JOHANNA CALGIE,

*Defendants - Appellees.*

United States District Court
District of South Carolina
No. 6:20-cv-01946-JD
Honorable Joseph Dawson, III

**APPELLEES' OPENING BRIEF**

R. Mills Ariail, Jr. (S.C. Fed Bar Id. No. 7925)
Law Office of R. Mills Ariail, Jr.
11 N. Irvine St. Ste 11
Greenville, SC 29601
(864) 232-9390
mills@rmalawoffice.com

Attorney for Defendants and Appellees
EmergencyMD, LLC, David Brancati, Johanna Calgie

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........................................................ i

TABLE OF AUTHORITIES ................................................. iv

APPELLEES' OPENING BRIEF ............................................ 1

Relevant Factual and Procedural Background ...................... 1

Summary of Argument ................................................. 6

I.   The District Court did not err by granting summary judgment in favor of Appellees. .............................................. 6

A.   Appellant's argument relies on misstated and misrepresented excerpts from the record and blatant, unsubstantiated falsehoods. ......... 6

   i.   Appellant misrepresents the nature of Jason Blasenak's deposition testimony. .......................................... 6

   ii.  Appellant grossly misrepresents Meghan Montagano's deposition testimony and employment status. ................. 6

   iii. Appellant stonewalled Appellees' efforts to locate or identify the "shared work computer" and intentionally withheld evidence. .......................................... 7

B.   The District Court correctly determined that Appellant failed to show she could satisfy all necessary elements of a claim under the Stored Communications Act. ......................... 7

II.  Appellant has no evidence to support the essential elements of her Stored Communications Act claim. ........................... 7

A.   There is no evidence that any of the named Appellees "accessed" Appellant's Gmail account within the meaning prescribed under the SCA. .................................... 7

B.   There is no evidence on the record which could show any alleged "access" by Appellees was "intentional". ............... 7

C.   Appellant expressly authorized Appellees to be able to access her work email on a work computer. ............................ 7

i

III.  The District Court did not commit error by failing to consider
      Appellant's Motion for a Finding of Spoliation of Evidence by
      Appellees. ................................................................................... 7

    A.  Appellant's own dilatory tactics prevented Appellees from
        locating and identifying the "shared work computer" ........................... 7

Standard of Review ............................................................................. 7

Argument .............................................................................................. 9

  I.  The District Court did not err by granting summary judgment in
      favor of Appellees .......................................................................... 10

  A.  Appellant's argument relies on misstated and misrepresented
      excerpts from the record and blatant, unsubstantiated falsehoods. ....... 11

      i.   Appellant misrepresents the nature of Jason Blasenak's
           deposition testimony. .......................................................... 11

      ii.  Appellant grossly misrepresents Meghan Montagano's
           deposition testimony and employment status. .......................... 16

      iii. Appellant stonewalled Appellees' efforts to locate or
           identify the "shared work computer" and intentionally
           withheld evidence. ............................................................... 18

  B.  The District Court correctly determined that Appellant failed
      to show she could satisfy all necessary elements of a claim
      under the Stored Communications Act. .............................................. 20

  II. Appellant has no evidence to support the essential elements of
      her Stored Communications Act claim. ............................................... 20

  A.  There is no evidence that any of the named Appellees
      "accessed" Appellant's Gmail account within the meaning
      prescribed under the SCA. ................................................................ 21

      a.   There is no evidence on the record which could show
           that any alleged "access" by Appellees was "intentional". ......... 24

  B.  Appellant expressly authorized Appellees to be able to access
      her work email on a work computer. ................................................... 26

  III. The District Court did not commit error by failing to consider
       Appellant's Motion for a Finding of Spoliation of Evidence by
       Appellees. .................................................................................... 27

  A.  Appellant's own dilatory tactics prevented Appellees from
      locating and identifying the "shared work computer" ........................... 29

ii

Conclusion ........................................................................ 32

Oral Argument Not Necessary ........................................ 32

CERTIFICATE OF COMPLIANCE ................................... 33

CERTIFICATE OF SERVICE ............................................ 34

# TABLE OF AUTHORITIES

Page

**Cases:**

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ................................................. 8

*Ballenger v. N.C. Agric. Extension Serv.*
    815 F.2d 1001 (4th Cir. 1987) ................................... 8

*Beale v. Hardy*
    769 F.2d 213 (4th Cir. 1985) ..................................... 8

*Catawba Indian Tribe of South Carolina v. State of South Carolina*
    978 F.2d 1334 (4th Cir. 1992) ................................... 8

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ..................................... 9, 11, 21

*Disher v. Synthes*
    371 F.Supp.2d 764 (D.S.C. 2005) ............................. 9

*Lujan v. Nat'l Wildlife Fed'n*
    497 U.S. 871 (1990) ................................................ 8

*Monahan v. Cnty. of Chesterfield*
    95 F.3d 1263 (4th Cir. 1996) ..................................... 8

*Van Alstyne v. Elec. Scriptorium, Ltd.*
    560 F.3d 199 (4th Cir. 2009) ............................. 21, 22

**Statutes:**

18 U.S.C. § 1030 ......................................................... 5, 6

18 U.S.C. § 2701 ......................................................... 21

18 U.S.C.A. § 2701 .................................................... 22

S.C. Code § 39–8–10 .................................................. 5

S.C. Code § 41–10–10 ................................................ 5

S.C. Code Ann. § 17-30-10 ......................................... 5

**Court Rules:**

Fed. R. Civ. P., rule 56 ........................................................................... 7

### Appellees' Opening Brief
---

### Relevant Factual and Procedural Background

Appellant Amanda Carson f/k/a Amanda Leche worked as a Physician's Assistant for EmergencyMD, LLC ("EMD") from February 2014 until approximately May 1, 2017. (JA_00242 to 00243). As part of her role as a Physician's Assistant, Appellant regularly used EMD company owned computers, which other employees of EMD, EMD Staffing, and Pain MD also had access to as shared work computers they used as part of their jobs. (JA_00184 to 00185; 00208 to 00229; 00248 to 00249)

On October 6, 2016, Carson signed a Code of Conduct and Compliance Plan that governed her relationship with EMD. (JA_00067 to 00095). In January 2017, Carson signed an Independent Contractor Agreement that further governed her relationship with EMD. (JA_00096 to 00108). As part of these agreements, Carson *expressly* agreed to be bound by the terms of said agreements, the company handbook, and all company policies. (JA_00152 to 00154). As a company practice, EMD provides all new employees a copy of its company handbook at the outset of their employment. (JA_00109 to 00147). Included in the employee handbook was EMD's Electronics Communication Policy, which provided in relevant part:

> "**All information created, sent, received, or stored on the company's electronic resources is company property**. Such information is not the private property of any employee **and employees should have no expectation of privacy in the use or contents of the company's electronic resources**. Passwords do not confer any right of privacy upon any employee of this company.

1

Employees should understand that the company may monitor the usage of its electronic resources and **may access, review, and disclose information stored on its electronic resources, including messages, personal e-mail communications sent and received on the employer's computers but when using private e-mail accounts, and other data, at any time, with or without advance notice to the user or the user's consent**."

(JA_00124) **(emphasis added)**.

Rather than setting up a new, free email account to use for work purposes, Appellant opted to use her pre-existing Gmail email account, **lechemandi@gmail.com**, to communicate at work and conduct business on behalf of EMD. (JA_00156 to 00158; 00385). Appellant further testified that she regularly used this email account on EMD company owned computers to conduct business on behalf of EMD. (JA_00155). Appellant also admitted to leaving her Gmail account logged in on EMD computers on numerous occasions. (JA_00186 to 00187).

On May 1, 2017, Appellant was terminated for violating EMD's Code of Conduct. (JA_00240 to 00243) Appellees learned of Appellant's violation as a result of the federal investigation into Theordore Vitaliy Khleborod (Id.; JA_00035). On or about April 26, 2017 an employee of PainMD, Khleborod, was arrested on federal charges for selling narcotics online. (JA_00201 to 00229). In the wake of this incident and subsequent investigation of Mr. Khleborod, Appellees learned that Ms. Carson (f/k/a Leche) had been having an affair with Mr.

Khleborod, which violated EMD's Code of Conduct. (JA_00192 to 00194; 00198; 00200; 00240 to 00241). As a result of this violation, she was terminated on May 1, 2017. (JA_00242 to 00243).

Meghan Montagano ("Montagano"), who was an employee of EMD Staffing, LLC during the time of Appellant's employment, also regularly used the shared work computers at EMD. (JA_00248 to 00249; 00496 to 00501). On May 30, 2017, approximately three (3) weeks after Appellant's termination, Montagano went to check her email on the shared workspace computer at EMD's Boiling Springs location. (JA_00248 to 00250) When she approached the computer, the Gmail inbox was already open in the web browser displayed on the screen, and having used the computer regularly, Montagano believed the web-browser was signed into her own Gmail account. *Id*. Montagano then noticed several emails she did not recognize. *Id.* Montagano suspected someone may have been in her email account, so she printed out several of the emails that she did not recognize and took them straight to her supervisor, Dr. Jason Blasenak. (JA_00253 to 00254).

Upon examining the printed documents, Dr. Blasenak pointed out that the documents did not appear to be from Montagano's Gmail account, but rather Appellant's Gmail account. (JA_00249 to 00250). Upon learning this information,

Montagano immediately went back to the shared work computer where she had initially discovered the emails, and immediately logged out of Appellant's Gmail account. (JA_00261).[1]

Dr. Blasenak noticed several concerning emails in which Appellant had been contacting other medical offices and appeared to be offering to bring over employees, patients, and documents from EMD. (JA_00312 to 00313). One of the emails contained the confidential and HIPAA protected information of approximately 214 patients.[2] (JA_00787). Upon closer inspection, Dr. Blasenak noticed from the emails that the confidential patient information had been sent to EMD's competitors, Oaktree and Pain Management Associates. (JA_00285; 00787).

After Appellant's termination, Appellant was still representing herself as an agent of EMD several weeks after her termination. (JA_00285). Specifically, on several occasions after her termination, Appellant represented herself to both Oaktree and PMA executives as a current employee and agent of both EMD and PainMD in the context of her emails by using the following signature line: "Lead Physician Assistant, EMD Advanced Urgent Care," and "Chief Operating Officer, PainMD Interventional Pain Medicine." *Id*.

---

[1]    Appellant specifically states in her deposition that she has no knowledge or information showing that Appellees Brancati or Calgie accessed her Gmail account. (JA_00174; 00181). Furthermore, Appellant released and dismissed Dr. Blasenak from the civil action. (JA_00797).

[2]    These 47 pages of emails have been removed/filed under Seal with the District Court, and are part of the attachment shown in the email at JA_00285.

As a result of this surprise discovery, Appellees learned that Appellant and her then-husband, Dr. Leche, had conspired to steal confidential information pertaining to EMD's company information, client information, and to solicit employees from EMD with the full knowledge and help from their future employer. (JA_00286; 00288; 00290 to 00293). It was not until Dr. Leche, and Konig PM, LLC filed a lawsuit in state court on March 9, 2018, against all named Appellees/Defendants (Civil Action No. 2018-CP-23–01439) that EMD acted on the impropriety that was inadvertently discovered by Montagano. (JA_00208 to 00229). Appellee EMD filed the "2018 Complaint" against Third-Party Defendant Amanda Carson f/k/a Amanda Leche (Plaintiff/Appellant in present case) and her new employers alleging (1) breach of contract, (2) breach of contract accompanied by fraudulent act, (3) breach of fiduciary duty, (4) tortious interference with contract, (5) civil conspiracy, (6) violation of South Carolina Trade Secrets Act, S.C. Code § 39–8-10 *et. seq.*, and (7) conversion. (JA_00201 to 00229).

On January 29, 2019, Appellant filed a counterclaim in the state case for wage payment under S.C. Code § 41–10–10 *et. seq.*, against EMD, Brancati, Calgie, and Blasenak and breach of contract against EMD. Third-Party Defendants Oaktree Medical Centre, PC and Labsource filed a Notice of Bankruptcy Stay protection on October 3, 2019. The state court action is currently stayed. (JA_00039).

On May 20, 2020, Appellant filed the subject action in the District Court, alleging six claims against Appellees: (1) violation of the South Carolina Homeland Security Act ("SCHSA"), S.C. Code Ann. § 17–30–10, et. seq., (2) violation of the Stored Communications Act ("SCA"), 18 U.S.C. §1030 et seq., (3)

violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C §1030 et
seq., (4) invasion of privacy, (5) defamation per se, and (6) civil conspiracy.
(JA_00001 to 00013).

On August 25, 2020, the District Court granted Appellees' motions to dismiss
Appellant's CFAA, defamation per se, and civil conspiracy claims. The court
denied Appellees' motions to dismiss Appellant's SCHSA, SCA, and invasion of
privacy claims. *Id.*

On January 11, 2022, the District Court issued a ruling on the cross-motions for
summary judgment in which they denied Appellant's motion for summary
judgment and granted Appellees' motion for summary judgment as to Appellant's
SCHSA and SCA claims, but declined to exercise supplemental jurisdiction over
Appellant's invasion of privacy claim or Appellant's motion for finding of
spoliation of evidence. (JA_00797 to 00808).

## Summary of Argument

**I. The District Court did not err by granting summary judgment in favor of Appellees.**

    **A. Appellant's argument relies on misstated and misrepresented excerpts from the record and blatant, unsubstantiated falsehoods.**

        **i. Appellant misrepresents the nature of Jason Blasenak's deposition testimony.**

        **ii. Appellant grossly misrepresents Meghan Montagano's deposition testimony and employment status.**

iii.   **Appellant stonewalled Appellees' efforts to locate or identify the "shared work computer" and intentionally withheld evidence.**

B.   **The District Court correctly determined that Appellant failed to show she could satisfy all necessary elements of a claim under the Stored Communications Act.**

II.   **Appellant has no evidence to support the essential elements of her Stored Communications Act claim.**

A.   **There is no evidence that any of the named Appellees "accessed" Appellant's Gmail account within the meaning prescribed under the SCA.**

B.   **There is no evidence on the record which could show any alleged "access" by Appellees was "intentional".**

C.   **Appellant expressly authorized Appellees to be able to access her work email on a work computer.**

III.   **The District Court did not commit error by failing to consider Appellant's Motion for a Finding of Spoliation of Evidence by Appellees.**

A.   **Appellant's own dilatory tactics prevented Appellees from locating and identifying the "shared work computer"**

**Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).

The factual dispute must be genuine, "that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Id.* at 252.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Ballenger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1005 (4th Cir. 1987).

The party moving for summary judgment bears the initial burden of establishing that there is "no genuine issue as to any material fact and that he is entitled to judgment as a matter of law." *Catawba Indian Tribe of South Carolina v. State of South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992).

However, once the moving party has met this initial burden, the non-moving party "may not rest upon the mere allegations or denials" contained in the pleadings. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 971, 984 (1990). The non-moving party "by affidavits or as otherwise provided in this rule, must set forth *specific* facts showing that there is a genuine issue for trial." *Id.* (*emphasis added*).

"Conclusory allegations or denials, without more, will not preclude the granting of a summary judgment motion." *Disher v. Synthes*, 371 F.Supp.2d 764, 769 (D.S.C. 2005).

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* The moving party is entitled to summary judgment "as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Id.* at 323.

## Argument

Appellant's assertion that the District Court erred in its findings of fact and application of law is flawed for copious reasons. First and foremost, Appellant relies on speculation and inferences, which are not supported by any facts in the record, to present their highly distorted "theory of the case" as a matter of fact for this court. Secondly, and most vexing to Appellees, is Appellant's attempt to backdoor their unsupported allegations as fact by incorporating blatantly false statements in their "Relevant Factual Background" and stating them as factually

true with no citation to the record. Appellant has time and again litigated this case in an unbecoming manner, distorted the record, and misstated the law. (JA_00756 to 00765).

Appellees found Appellant's opening brief difficult to follow due to its convoluted and disjointed nature, lack of legal authorities, and little-to-no legal argument. Appellant conflates multiple legal issues, essential elements of their claim, and seemingly has a fundamental misunderstanding of the summary judgment standard.

This is a much more straightforward and simple case than Appellant seeks to have this Court believe, and the District Court was correct when it properly granted summary judgment in favor of Appellees.[3]

## I.  The District Court did not err by granting summary judgment in favor of Appellees.

Appellant seeks to trivialize the summary judgment standard of "viewing evidence in the light most favorable to the non-moving party" into something akin to "everything Appellant argues must be taken as fact, including inferences that are supported by little-to-no evidence". This is entirely incorrect.

Under the summary judgment standard, the mere existence of scintilla of evidence will be insufficient to overcome a motion for summary judgment, and the

---

[3]  Appellant appealed the District Court's decision granting summary judgment in favor of Appellees on her claims under both the SCA and SCHSA. Appellant has failed to address or provide any additional information relating to her SCHSA claim, and as a result summary judgment in favor of Appellees should be affirmed.

non-moving party may not rest on conclusory allegations or pleadings. The party moving for summary judgment need only show that the opposing party lacks evidence sufficient to support its case. *Celotex Corp. v. Catrett*, 477 U.S. at 325. Yet such conclusory allegations are exactly what Appellant relies on to form the foundation of her argument.

Simply put, there is no genuine issue of material fact that could lead a reasonable factfinder to believe that Appellant would be able to prove her case at trial. *Celotex Corp. v. Catrett*, 477 U.S. at 325 Appellant falls short of meeting multiple essential elements of her claims and there is concrete evidence on the record which shows the essential elements cannot be met. As such, the District Court was correct in granting Appellees' Motion for Summary Judgment (JA_00797 to 00808).

**A. Appellant's argument relies on misstated and misrepresented excerpts from the record and blatant, unsubstantiated falsehoods.**

**i. Appellant misrepresents the nature of Jason Blasenak's deposition testimony.**

One of Appellant's first assertions in her argument is that not enough "credit" was given to the testimony of Dr. Jason Blasenak, and that his testimony contradicts that of Meghan Montagano. (Appellant's Opening Br. 9–10, ECF No. 17). While Dr. Blasenak's testimony may not be identical to that of Meghan Montagano, it does not outright contradict anything she says in her deposition as Appellant attempts to have this Court believe. Specifically, when Appellant states,

11

"Montagano's subsequent access of (at least) 26 of Appellant's emails could not have been by mistake, as she so conveniently alleges after the fact," the two citations provided as supporting evidence do not even make sense in the context of what Appellant is trying to support. (Appellant's Opening Br. 10, ECF No. 17).

In fact, Blasenak simply states he did not remember it that way but he in no way denies or specifically states that Montagano is not correct. (JA_00491). This simply does not create a genuine issue of material fact because Appellant still cannot substantiate or support the essential elements of her causes of action.

Furthermore, the excerpts that Appellant does rely on take on an entirely different meaning when viewed in the context of the entire deposition. When taking the deposition of Jason Blasenak as a whole, his testimony is effectively that **he can't remember the exact events or series of events that took place in May of 2017** because it was so long ago. (Blasenak's Dep. 89:2–25 - 91:1–2).

2 Q There was no -- you didn't have to put a

3 pass code in; you didn't have to do anything on the

4 computer to open it up.

5 A Correct.

6 Q So you saw it at that point in time, and

7 then did you do anything else on the computer?

8 A No.

12

9 Q You know you didn't punch any keys, or do

10 anything of that nature, at that point in time.

11 A Not that I recall.

12 Q So then I guess you stopped and you get

13 up. Do you remember how you alerted anybody about

14 it -- Meghan or David -- at that point in time?

15 A I can't recall.

16 Q Do you remember or do you know if

17 Meghan -- I mean, Meghan was there during the day,

18 correct?

19 A I would assume she was there. She is

20 normally there in Boiling Springs, Monday through

21 Friday.

22 Q And she used that computer, correct?

23 A Correct.

24 Q So you're not sure, or can't tell us, if

25 she was on that computer and had already printed

1 stuff out beforehand.

2 A Correct.

3 Q So she could have already done some

4 stuff, got those emails and did stuff beforehand.

5 A I guess.

6 Q You just can't recall, right?

7 A Yeah.

8 Q And you're saying that you didn't see

9 those emails that were printed off, or remember her

10 showing them to you on that day.

11 A No.

12 Q But you have a conversation with her at

13 some point about the emails; is that right?

14 A Correct.

15 Q Or about the --

16 A Email account.

17 Q -- email account.

18 A Yes.

19 Q At any time did you, Brancati, or Calgie

20 authorize or tell Montagano or any employee to go

21 back and start printing emails out?

22 A Not that I recall.

23 Q And no one, to the best of your

24 knowledge, has intentionally gone in and accessed

25 this information.

1 MR. FEW: Object to the form.

2 WITNESS: Not that I recall.

(Blasenak's Dep. 89:2–25 - 91:1–2).

Blasenak also went on to testify that he has no reason to believe that Meghan Montagano is lying or that her testimony is untrue. (Blasenak's Dep. 111:7–25 - 112:1).

8 Q Meghan Montagano, you worked with her

9 when you were at EMD, correct?

10 A Correct.

11 Q Do you have any reason to believe that

12 she's lying?

13 A No.

15

14 Q I mean, you haven't found her -- there

15 weren't any issues, when you were there, that she

16 wasn't trustworthy, or you had issues while you

17 were employed with her, while you worked with her.

18 A Not to the -- you know, not that I could

19 say, no.

20 Q And sitting here today, you believe she's

21 an honest individual.

22 A Yes. To the best of my knowledge, yes.

23 Q So there's no reason to really say that

24 she would be lying, or making up what she said, as

25 part of her testimony.

1 A Not to the best of my knowledge.

*Id*.

### ii. Appellant grossly misrepresents Meghan Montagano's deposition testimony and employment status.

There is nothing in the record that could lead a reasonable factfinder to

determine that Appellant's Gmail account was accessed outside of the singular

time testified to by Meghan Montagano. (JA_00248 to 00255; 00183 to 00184). Since Meghan Montagano was an employee of EMD Staffing, LLC, and EMD Staffing, LLC has never been named a party to the subject action, the court correctly determined that the sole instance of access was only as a "third-party". (JA_00804). The District Court determined that Montagano's admitted access was only as a "third-party," as she was an employee of EMD Staffing, LLC at the time the inadvertent access took place. *Id.*

Appellee Brancati explicitly stated no fewer than eight (8) times in EMD's 30(b)(6) deposition that Meghan Montagano was *not* an employee of Appellee EMD in May of 2017. (JA_00496; 00498 to 00501; 00513; 00719). Rather, she was an employee of EMD Staffing, LLC, which is an entirely separate entity and not a named party in this action. *Id.*

If Appellant disputed Appellee EMD's testimony or had further inquiries regarding Meghan Montagano's status after taking the 30(b)(6) deposition of EMD, then she had ample time to use the discovery tools at her disposal to investigate the matter further. The sole support Appellant relies on for her argument that Meghan Montagano was somehow an agent of EMD is a singular ambiguous quote from Meghan Montagano's deposition, which is only ambiguous because of opposing counsel's vague question but clearly does not show Montagano was employed by EMD in May 2017. (JA_00245 to 00246; 00497 to 00498).

### iii. Appellant stonewalled Appellees' efforts to locate or identify the "shared work computer" and intentionally withheld evidence.

Another crux of Appellant's argument is that because the specific "shared work computer" in question was never identified, evidence must have been "spoiled". A quick look through the record will show that Appellees conducted their due diligence in attempting to locate the shared work computer, and the only reason Appellees were not able to inquire further into determining the exact "shared work computer" and where it was located is due to Appellant's own actions and lack of cooperation. (JA_00375 to 00376; 00412 to 00414; 00578 to 00613).

Section III of this brief will address this matter in more detail, but as a preliminary matter, the first time Appellees were made aware of Appellant's desire to locate the "shared work computer" was in a January 8, 2021 email. (JA_00579). After being served with Appellant's Request for Inspection and attempting to locate the "shared work computer", Appellees informed opposing counsel that additional information was needed to locate a shared work computer due to the fact that it had been over four (4) years since the incident in question. (JA_00599; 00788 to 00796). Furthermore, Appellant never asked for any computers to be preserved through a preservation letter despite the fact that EMD has numerous computers spread over three (3) locations. (JA_00601 to 00602; 00801 to 00802).

Despite repeated attempts by Appellees' counsel to locate the "shared work computer", Appellant refused to assist or provide any information that may help identify the "shared work computer". (JA_00412 to 00414; 00578 to 00608).

Appellant never filed a Motion to Compel, nor did Appellant even attempt to "meet and confer" with opposing counsel to resolve the matter. (JA_00539). Appellant did not depose Michael Brown, EMD's third-party IT consultant, or send a subpoena to Google to obtain the requested information. (JA_00802). Appellant simply served the Request for Inspection, refused to take any affirmative actions to conduct discovery regarding the "shared work computer" in her own case, prevented Appellees from being able to attempt to identify the "shared work computer" by withholding evidence, then filed a Motion for Spoliation and Sanctions on October 1, 2021. (JA_00472).

It is important to note that Appellant's own expert, Tim Thames, testified in his deposition that the metadata extracted from Appellant's Gmail account would contain an IP address which could help identify and locate the "shared work computer" in question. (JA_00365, 00384). He also stated multiple times in his deposition Appellant's counsel had never asked him to search this metadata to determine when Appellant's Gmail account was accessed and where it was accessed from. (JA_00365; 00367; 00375 to 00376). This further demonstrates that Appellant and her counsel had the ability and information they needed to identify the "shared work computer", but refused to do so and withheld this same information from Appellees to frustrate the discovery process so that Appellant could file a Motion for Spoliation and attempt to have the court grant them relief to which they were not entitled. (*Id*.; JA_00412 to 00414).

**B.   The District Court correctly determined that Appellant failed to show she could satisfy all necessary elements of a claim under the Stored Communications Act.**

Appellant has failed to show or produce any evidence relating to multiple elements essential to her Stored Communications Act ("SCA") claim. As such, her claim cannot stand up to the summary judgment standard and a reasonable fact finder would have no choice but to determine that Appellant fails to meet the burden necessary to survive summary judgment.

Even under the most favorable standard and giving Appellant every benefit of the doubt, Appellant's contentions are fatally flawed. She fails to show any evidence supporting multiple essential elements required under the statutory language of the SCA, including access, intent, and lack of authorization. Section II of this brief will go into a more detailed analysis of why Appellant fails to meet each of the aforementioned elements of her SCA claim.

With respect to this claim, the analysis really need not go beyond the first element since Appellant and her expert *explicitly* stated on the record that they have no evidence that the named Appellees ever accessed the Gmail account. (JA_00184; 00384).

**II.   Appellant has no evidence to support the essential elements of her Stored Communications Act claim.**

To be successful on her claim under the SCA, Appellant must prove that Appellees (1) accessed a system through which electronic communication service is provided (2) without authorization, or had authorization but exceeded its

20

authority in obtaining the information in questions; (3) obtained, altered, or prevented access to, a wire or electronic communication while it was in electronic storage; and (4) acted intentionally. *Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 204 (4th Cir. 2009) (quoting 18 U.S.C §2701(a)(1)-(2)).

Appellant simply cannot meet these requirements, and improperly tries to use the summary judgment standard as an attempt to patch the numerous glaring holes in her case. There is no clear evidence in the record that indicates a dispute as to a genuine issue of fact which would be material to the disposition of Appellant's claim. There is no question that the Appellant cannot satisfy all the elements set forth above to successfully litigate this matter in the District Court at the summary judgment stage, let alone a full trial. Appellant must produce evidence to the contrary, which is supported by the record, and they have failed to do so. Thus, summary judgment in favor of the Appellees is proper. *Celotex Corp. v. Catrett*, 477 U.S. at 322–323.

### A. There is no evidence that any of the named Appellees "accessed" Appellant's Gmail account within the meaning prescribed under the SCA.

As with much of this case, Appellant's brief took significant liberties in construing facts, omitting information, and blatantly misrepresenting the record in a disingenuous attempt to bolster their case.

Despite this, nothing in the record indicates that any of the named Appellees ever "accessed" Appellant's Gmail account, yet alone did so "intentionally".

(JA_00184; 00384) As stated previously, Appellant explicitly states in her deposition that she cannot show any of the named Appellees ever accessed her Gmail account. (JA_00184). Moreover, Appellant's expert witness, Tim Thames, states that he cannot show who, when, where, or even if Appellant's Gmail account was ever accessed. (JA_00384; 00386 to 00390; 00397 to 00398).

Appellant is stuck with the record evidence which shows the only access that occurred which would rise to the level of "access" intended under the SCA, was from Meghan Montagano who was an employee of EMD Staffing, LLC. (JA_00496; 00498 to 00501). Appellant also attempts to portray Dr. Blasenak's minimal interaction with the "shared work computer" as "accessing" Appellant's Gmail account, but the record evidence shows all he did was "wake" the computer which is not sufficient for access under the SCA. *Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d at 204. There is not a single shred of evidence that indicates or could lead a factfinder to infer that any of the named Appellees ever "accessed" Appellant's gmail, let alone "obtained, altered, or prevented authorized access to a wire or electronic communication *while it is still in the storage in such system*." 18 U.S.C.A. §2701(a)(1–2) (*emphasis added*). In fact, the record indicates the only interaction Appellees ever had with Appellant's Gmail was handling the hard copies of the emails that had been printed by Meghan Montagano. (JA_00504; 00515 to 00516). Appellant has failed to show access from the named Appellees and as a result, the cause of action was properly dismissed through summary judgment.

The Court also needs to be aware that Appellant utilized the services of a computer expert, Tim Thames, who testified in his deposition that he had the necessary information through Google Takeout to determine when access occurred, and on what computer, but that Appellant's counsel had not requested for him to review this information. (JA_00365; 00367; 00375 to 00376). It is extremely troubling that Appellant did not disclose or produce this data after repeated requests from Appellees, but that Appellant also failed to ask his own expert to analyze the metadata to determine when access had occurred. (*Id*.; JA_00412 to 00414; 00578 to 00608).

Despite the fact that Montagano was not an employee of EMD in May 2017, Appellant claims that Meghan Montagano's actions could not have been by mistake yet there is nothing in the record that could lead a reasonable factfinder to determine that Montagano's actions were willful and deliberate. Instead, Appellant attempts to distort the facts and convolute the record testimony by stating that "Montagano's access, done with the express knowledge, aid and encouragement of Appellees, was 'intentional.'" (Appellant's Opening Br. 11–12, ECF No. 17). This is unequivocally false and *entirely* unsupported by record evidence. Appellant provides no citation to support this assertion and no evidence supporting this misrepresentation. Appellant's counsel has nothing to support that it was "intentional" and therefore misrepresents to the Court the accuracy of the underlying evidence. In fact, Appellant and her expert have said they have no information showing that it was **intentional** and they cannot prove intent as to any of the named Appellees. (JA_00164 to 00165; 00168 to 00169; 00174 to 00181). It

23

also is worth noting that Appellant testified in her deposition that she had no issues with Meghan Montagano and had nothing showing that Meghan Montagano was not telling the truth in her deposition. (JA_00183 to 00184).

Appellant then goes on further to erroneously state that the open Gmail account "was accessed repeatedly." (Appellant's Opening Br. 11, ECF No. 17). This statement too is blatantly false and not supported *anywhere* in the record evidence. In fact, Appellants' own expert testified that he could not say whether the email account had been accessed multiple times, and further went on to state that he had never even been asked to review the metadata obtained from Appellant's Gmail account or look for multiple points of access. (JA_00365 to 00367; 00375 to 00376). Appellant's expert also testified that he cannot show "access" outside of the singular instance on May 30, 2017, when Meghan Montagano accidentally printed the emails in question. (JA_00384). He also testified that he could not show that any access was "intentional". (JA_00419). He further went on to testify that he cannot and would not be opining as to if anyone entered Appellant's password or bypassed the system to be able to get to her email, and that he has not even been asked to look for such evidence despite the probability of its existence. (JA_00401 to 00402).

### a. There is no evidence on the record which could show that any alleged "access" by Appellees was "intentional".

Appellant herself testified that she had no proof or knowledge, outside of discovery responses, that Brancati, Blasenak, or Calgie ever accessed her email,

yet alone did so "intentionally". (JA_00181). Appellant's expert testified that he has no information showing that there was any access, yet alone intentional access into Appellant's Gmail account. (JA_00419).

Both the testimony of Meghan Montagano and Dr. Jason Blasenak indicates that any interaction they had with the "shared work computer" which could potentially be construed as "access", was entirely inadvertent. (JA_00248 to 00249; 00484). Montagano testified that she printed the emails because she believed that her email account had been hacked. (JA_00248 to 00249). Dr. Blasenak said that all he did was wake the computer up by moving the mouse. (JA_00484).

Appellant also claims that the district court erred when determining that Appellant "forgot to log out of her Gmail account", yet this finding is supported by Appellant's own testimony. (JA_00186 to 00187). This testimony is only further corroborated by that of Jason Blasenak and Meghan Montagano. (JA_00248 to 00249) . There is nothing in the record to suggest that anyone on behalf of the Appellees accessed Appellant's Gmail account, or even that they had the ability to do so, let alone did so "intentionally".

The reality is that Appellant has no evidence to support the assertion that a named Appellees even accessed her Gmail account, making any argument or analysis relating to the "intentionality" element moot. Therefore, Appellant's counsel resorts to misrepresentations and irrelevant outside information. Appellant's counsel attempts to speculate as to motivations for why this occurred

but fails to produce anything of substance to support the necessary requirements to satisfy the elements or cite any record evidence showing support for the elements of the SCA cause of action.

As a further attempt to mislead this Court, Appellant's counsel states that Montagano searched Appellant's Gmail inbox or outbox to retrieve this information. (Appellant's Opening Br. 11–14, ECF No. 17) This is blatantly false and Montagano herself said that she did not in any way search Appellant's Gmail. (JA_00258 to 00259; 00261). Furthermore, both Appellant and Appellant's expert testified that they cannot show any searches occurred by Appellees in Appellant's Gmail account. (JA_00181; 00383).

There is not a single scintilla of evidence in the record that could lead a reasonable factfinder to infer any "intentional" access by Appellees.

> **B.    Appellant expressly authorized Appellees to be able to access her work email on a work computer.**

Appellant goes on to draw the incorrect conclusion that the district court determined Appellees' access was "authorized" because "Appellant could have accidently left her Gmail account logged in.", without even mentioning the highly relevant fact that she had entered into multiple contracts with EMD that governed her employment, including EMD's Electronics Communications Policy. (JA_00124; 00067 to 00095, 00096 to 00108).

Under this policy "all information created, sent, received, or stored on the company's electronic resources is company property." (JA_00124). The Electronic

Communication Policy also provides that "[e]mployees should understand that the company may monitor the usage of its electronic resources and *may access, review, and disclose information stored on its electronic resources, including messages, personal e-mail communications sent and received on the employer's but using private e-mail accounts*, and other data, *at any time, with or without advance notice to the user or the user's consent*." *Id*. (*emphasis added*).

Thus, there was no reason for the District Court to conduct in-depth analysis of this element, but in the event such an analysis was done, Appellees believe the District Court would have reached the same result due to the Electronic Communications Policy that Appellee EMD had in place and that Appellant explicitly agreed to be bound by when she signed her Code of Conduct, Compliance Plan, and Independent Contractor Agreement. (JA_00067 to 00095; 00096 to 00108; 00109 to 00147; 00152 to 00154).

### III. The District Court did not commit error by failing to consider Appellant's Motion for a Finding of Spoliation of Evidence by Appellees.

Appellant again references "evidence" in the record that supposedly supports their claims without providing any citations. While there is no dispute that the emails were printed on May 30, 2017, claiming that "EMD searched through Appellant's Gmail and obtained access to at least 26 separate emails stored remotely the Gmail server," is a blatantly false statement and a gross misrepresentation of the facts and record. Appellant's expert says he can provide

no information if the Gmail account was searched or accessed by named Appellees, primarily because he was never asked by Appellant to look for this information. (JA_00365 to 00367; 00372; 00375 to 00376; 00383; 00386 to 00390; 00398; 00425 to 00426).

Appellant's argument continues to devolve further into what can best be described as a disjointed and unsupported rant, but Appellees will do their best to parse the next portion of Appellant's argument in a clear and concise manner.

Appellant argues that an e01 extraction report **would** have shown the extent of any "access" by Appellees. (Appellant's Opening Br. 14–15, ECF No. 17). This is simply not correct and not what Appellant's own expert testified to. Appellant's expert, Tim Thames, testified that the eo1 extraction "may" show alleged access, but that he could not say for sure as he had never been asked to look into that information and metadata. Furthermore, he was unsure if the information would still be present because it could have been overwritten by upgrades. (JA_00405–00407). In contrast to Appellant's assertion, it is not "definitive" that eo1 extraction would show the extent of any alleged access, but rather a possibility per their expert's testimony. (JA_00404–00407).

### A.   Appellant's own dilatory tactics prevented Appellees from locating and identifying the "shared work computer".

Appellees exercised their due diligence in attempting to locate the "shared work computer", and when their efforts were unsuccessful, they notified opposing counsel and sought additional information that may assist them in identifying the computer in question. (JA_00569 to 00608).

In response to Appellees' inquiries, Appellant's counsel misled Appellee's counsel on numerous occasions and continued to assure Appellees that LegalEagle was "searching" the metadata for an IP address for the "shared work computer". (JA_00574 to 00576; 00578 to 00608). Counsel for Appellees has asked opposing counsel for the metadata from the Google Takeout extraction no fewer than seven (7) times.[4] Yet despite explicit assurances from opposing counsel that the metadata would be provided, including once during their own expert's deposition, the data has never been provided by Appellant. (JA_00412 to 00414; 00577 to 00608).

With regard to Appellant's assertions about Michael Brown's affidavit, Appellant's counsel has always been aware that Michael Brown was a fact witness who could testify about information technology related to Appellee EMD. Appellant was notified by Appellees, in supplemental discovery responses on or

---

[4]   Appellant's counsel was asked to provide the metadata from the Google Takeout in an email on January 20, February 22, and March 16, 2021, (JA_00591; 00599; 00600); in person at Tim Thames' deposition on September 2, 2021, (JA_00412 to 00414); in an email the following day on September 3, 2021, after Appellee's first learned that opposing counsel had been in possession of the metadata for months (JA_00608); and once more in a follow-up email dated September 17, 2021.(JA_00608).

before July 16, 2021, that Michael Brown was a fact witness who had knowledge of the computers at EMD. Appellant's counsel was again notified of Michael Brown and his relation to Appellee EMD as their third-party IT consultant during the 30(b)(6) deposition, and Appellant's counsel even stated in EMD's 30(b)(6) deposition that he would be taking the deposition of Michael Brown. (JA_00506 to 00507). However, Michael Brown was never deposed by Appellant's counsel because Appellant's counsel stated he was "too tired" to keep fighting this case. (JA_00560).

Appellant was fully capable of taking Michael Brown's deposition to get additional information and clear up any ambiguities or disputes related to the EMD computers they contend existed. Appellant's own lack of due diligence cannot be used to create what they contend is a "material issue of fact" in order to survive summary judgment or support their motion for spoliation.

Appellant makes another disingenuous attempt to misrepresent the facts by saying that Michael Brown's affidavit was a way to "backdoor" expert testimony, when in reality, the affidavit was in response to Appellant filing a frivolous motion for spoliation and sanctions without ever attempting to depose Michael Brown after being made aware that he was the most knowledgeable individual of the computers at EMD. (JA_00609 to 00613).

Most damning to opposing counsels' argument on this point, is that their own expert testified that the metadata contained in the native email files he extracted through Google Takeout would show the workstation the emails were sent and received on. (JA_00425). After downloading this metadata, Appellant's expert

30

loaded it into a database for Appellant's counsel to review on January 26, 2021. (JA_00054; 00425 to 00426). Despite multiple emails from Appellant's counsel assuring that he would LegalEagle review the metadata to assist in identifying a computer, the testimony of Appellant's expert witness makes it clear that Appellant and her counsel never even attempted to search the metadata for identifiable information or asked their expert to search for this information. (JA_00363; 00365; 00367; 00375 to 00378; 00384; 00412 to 00414; 00421 to 00426; 00578 to 00608).

Any claims of discovery impropriety on the part of the Appellees are precluded by Appellant and her counsel's own actions, or lack thereof. Appellant demanded Appellees identify the "shared work computer" but staunchly refused to help Appellees identify a computer while simultaneously preventing them from being able to do so by withholding metadata which had been requested no fewer than seven (7) times over the course of eight (8) months. (JA_00412 to 00414; 00569 to 00608). Not only did Appellant withhold this crucial evidence, but they deliberately lied to Appellees and hid the fact it was in their possession since January 26, 2021. Appellees were not made aware of the existence of this metadata and it was not disclosed until the topic came up in the deposition of Appellant's expert, Tim Thames. (JA_00412 to 00414; 00608). Appellant's deliberate actions effectively stonewalled Appellees from being able to locate the "shared work computer" in an attempt to get an improper spoliation charge.

**Conclusion**

Appellees respectfully request for this Court to uphold the District Court's summary judgment ruling as to Appellant's SCA and SCHSA claims and to uphold the Court's decision to not exercise supplemental jurisdiction over Appellant's remaining state law cause of action and the pending motion.

**Oral Argument Not Necessary**

Oral argument is unnecessary pursuant to Rule 34 because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral arguments.

Law Office of R. Mills Ariail, Jr.

Respectfully submitted,

Dated: June 22, 2022          By:  /s/ R. Mills Ariail, Jr.

R. Mills Ariail, Jr.

S.C. Fed Bar Id. No. 7925
Law Office of R. Mills Ariail, Jr.
11 N. Irvine St. Ste 11
Greenville, SC 29601
(864) 232-9390
mills@rmalawoffice.com

Attorney for Defendants/Appellees
EmergencyMD, LLC, David
Brancati, and Johanna Calgie

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **7,023 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Times New Roman**, using TypeLaw.com's legal text editor.

Law Office of R. Mills Ariail, Jr.

Respectfully Submitted,

Dated: June 22, 2022          By: /s/ R. Mills Ariail, Jr.

R. Mills, Ariail, Jr.

Attorney for Defendants/Appellees
EmergencyMD, LLC, David
Brancati, and Johanna Calgie

## Certificate of Service

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the Appellate CM/ECF system on June 22, 2022. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Law Office of R. Mills Ariail, Jr.

Respectfully submitted,

Dated: June 22, 2022          By: /s/ R. Mills Ariail, Jr.

R. Mills Ariail, Jr.

Attorney for Defendants/Appellees
EmergencyMD, LLC, David
Brancati, and Johanna Calgie